# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 9, 2012

## STATE OF TENNESSEE v. BOBBY DUANE PARKER

**Direct Appeal from the Criminal Court for Williamson County**
**No. II-CR125348    Walter C. Kurtz, Judge**

---

**No. M2012-00748-CCA-R3-CD - Filed February 6, 2013**

---

The appellant, Bobby Duane Parker, pled guilty in the Williamson County Circuit Court to four counts of theft, two counts of unlawful possession of a weapon, one count of resisting arrest, and one count of evading arrest. The trial court imposed a total effective sentence of twenty-seven years. On appeal, the appellant challenges the imposition of consecutive sentencing. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Vanessa Pettigrew Bryan (on appeal) and Robert W. Jones (at trial and on appeal), Franklin, Tennessee, for the appellant, Bobby Duane Parker.

Robert E. Cooper, Jr., Attorney General and Reporter, Brent C. Cherry, Senior Counsel; Kim R. Helper, District Attorney General; and Mary K. White, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

On November 28, 2011, the appellant, a career offender, pled guilty to eight counts of a nine-count indictment. Specifically, the appellant pled guilty to one count of theft of property valued over $10,000 but less than $60,000, a Class C felony; three counts of theft of property valued less than $500, a Class A misdemeanor; two counts of unlawful possession of a weapon, a Class E felony; one count of resisting arrest, a Class B

misdemeanor; and one count of evading arrest, a Class A misdemeanor. The plea agreement provided that the trial court would determine the length and manner of service of the sentences. The appellant stipulated that there was a factual basis for his pleas.

At the sentencing hearing on March 5, 2012, the State submitted judgments of convictions which reflected that on January 27, 2012, the appellant was convicted in Rutherford County of three counts of aggravated robbery and one count of attempted aggravated burglary and received an effective sentence of forty-two years. Also in Rutherford County, on June 20, 2012, the appellant was found guilty of violating the probationary sentences he was serving for convictions of possession of a Schedule II drug and aggravated robbery, and he was ordered to serve his original sixteen-year-sentence in confinement. The Rutherford County Circuit Court ordered the appellant to serve the forty-two-year sentence consecutively to the sixteen-year sentence for a total effective sentence of fifty-eight years. In the instant case, the State recommended that the sentences imposed be served concurrently with the forty-two-year sentence but consecutively to the sixteen-year sentence.

Rutherford County Sheriff's Detective Jim Tramel testified at the sentencing hearing that in October 2010, he responded to the scene of a home invasion in Smyrna. The three victims, Joanna, Tommy, and John McClendon, told Detective Tramel that when they came home, the perpetrator came down the stairs and pointed a gun at them. The perpetrator took money, electronics, a camera, and custom-made golf clubs, one of which had a "beaver head cover." The perpetrator left the residence in the victims' 2005 white Volvo. Police chased the perpetrator but were unable to apprehend him.

The next morning, Detective Tramel was informed that the victims' car had been located behind the Tractor Supply Company in Triune. Police processed the vehicle, but no golf clubs were found. Thereafter, Detective Tramel contacted the Williamson County Sheriff's Department and learned that a 2010 white Ford Explorer was stolen approximately one mile from the Tractor Supply Company. Detective Tramel believed the two crimes were linked.

In order to locate the golf clubs, Detective Tramel contacted pawn stores and local Play It Again Sports stores and asked to be informed if anyone brought in golf clubs matching the description of the stolen items. Approximately three days later, the manager of the Play It Again Sports store at Cool Springs Galleria called Detective Tramel and said that the appellant was trying to sell the stolen golf clubs. Detective Tramel contacted the Franklin Police Department to request assistance in apprehending the appellant.

Detective Tramel said that after the appellant was caught trying to sell the golf clubs,

he compiled a photograph line-up and showed it to one of the victims, who positively identified the appellant as the perpetrator. Detective Tramel noted that he recorded an interview with the appellant, he played the interview for the victims, and the victims identified the appellant's distinctive voice from the interview.

Detective Tramel stated he felt that the appellant was "a menace, and I do feel that with the violent acts that he's partaken in, it's just a matter of time before somebody winds up getting shot and killed and he eliminates any witnesses that could potentially testify against him." Detective Tramel noted that one of the victims shot at the appellant as he fled the scene.

Detective Tramel said that a couple of days prior to the Rutherford County robbery and automobile theft, Warren Tiller and Allen Stanford each reported that a firearm had been stolen from them. Both men resided near the location of the home invasion. The firearms were ultimately found in the 2010 Ford Explorer. Detective Tramel stated that the appellant had resided in that area and that he was "preying on his neighbors."

Franklin Police Officer Todd Stamper testified that at the time of the offenses, he was the Alpha Shift Patrol Sergeant. In October 2010, he received a call advising that someone at the Play It Again Sports store in Cool Springs, who was later identified as the appellant, was trying to sell unique golf clubs that were possibly related to a home invasion. Officers tried to apprehend the appellant, and he fled through the back of the store. The officers gave chase but eventually lost sight of the appellant.

Officer Stamper and other officers searched for the appellant for approximately an hour and a half. During the search, Officer Stamper went into a Subway restaurant. The appellant had locked himself in the women's restroom. When officers opened the door, the appellant crawled into the ceiling to try to escape, but the ceiling collapsed. When Officer Stamper and another officer apprehended the appellant, he initially resisted and then became still and unresponsive.

Officer Stamper said that the stolen white Ford Explorer was found in front of Play It Again Sports. Officer Stamper later learned that two firearms were found in the Explorer, at least one of which was loaded. Officer Stamper opined that "knowing [the appellant's] history, knowing what we had to go through to apprehend him . . . and what he did in Rutherford County, I do believe that if he's not kept contained he's going to end up hurting somebody badly."

The parties agreed that the twenty-nine-year-old appellant was a career offender and that he was on probation at the time the instant offenses were committed. The trial court

sentenced the appellant to fifteen years for the conviction of theft of property valued over $10,000 but less than $60,000; to eleven months and twenty-nine days for each of his three convictions of theft of property valued less than $500 and for his conviction of evading arrest; to six years for each of his two convictions of unlawful possession of a weapon; and to six months for his conviction of resisting arrest.

In determining whether the appellant's sentences should be served concurrently or consecutively, the court found that the appellant was a professional criminal who had knowingly devoted his life to criminal acts as a major source of livelihood, that the appellant had an extensive criminal history, that the appellant was a dangerous offender, and that the appellant was being sentenced for an offense committed while he was on probation. See Tenn. Code Ann. § 40-35-115(b)(1), (2), (4), and (6). The court stated that the appellant had been given opportunities to rehabilitate, including punitive measures, treatment, and probation, but the appellant continued to offend. The court observed that the appellant had an "extraordinarily lengthy and serious criminal record" and that many of his offenses were committed while he was on probation or parole. Therefore, the court determined that confinement was necessary to protect the public from being further victimized by the appellant.

The court ordered that the five misdemeanor sentences be served concurrently with each other and with one of the six-year felony sentences for unlawful possession of a weapon and that the three felony sentences be served consecutively to each other for a total effective sentence of twenty-seven years. Additionally, the court ordered that the twenty-seven-year sentence be served consecutively to the forty-two-year Rutherford County sentence and to the sixteen-year Rutherford County sentence.

On appeal, the appellant argues that the trial court erred by ordering that the Williamson County sentences be served consecutively to his Rutherford County sentences.

## II. Analysis

Previously, appellate review of the length, range, or manner of service of a sentence was de novo with a presumption of correctness. See Tenn. Code Ann. § 40-35-401(d). However, our supreme court recently announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). Our supreme court has further explicitly stated that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." State v. Christine Caudle,

__ S.W.3d __, No. M2010-01172-SC-R11-CD, 2012 WL 5907374, at *5 (Tenn. at Nashville, Nov. 27, 2012). In conducting its review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also Bise, 380 S.W.3d at 697-98. The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c).

Although the trial court should also consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. See Tenn. Code Ann. § 40-35-114; see also Bise, 380 S.W.3d at 701; State v. Carter, 254 S.W.3d 335, 343 (Tenn. 2008). We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343. "[A]ppellate courts are therefore left with a narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence." Id. at 345-46. "[They are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346.

Generally, "[w]hether sentences are to be served concurrently or consecutively is a matter addressed to the sound discretion of the trial court." State v. Adams, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997). Tennessee Code Annotated section 40-35-115(b) contains the discretionary criteria for imposing consecutive sentencing. See also State v. Wilkerson, 905 S.W.2d 933, 936 (Tenn. 1995). Because the criteria for determining consecutive sentencing "are stated in the alternative[,] . . . only one [criterion] need exist to support the appropriateness of consecutive sentencing." State v. Mickens, 123 S.W.3d 355, 394 (Tenn. Crim. App. 2003).

The court imposed consecutive sentencing after finding that the appellant was a professional criminal who had knowingly devoted his life to criminal acts as a major source of livelihood, that the appellant had an extensive criminal history, that the appellant was a dangerous offender, and that the appellant was being sentenced for an offense committed while he was on probation. See Tenn. Code Ann. § 40-35-115(b)(1),(2), (4), and (6).

The appellant argues that the trial court erred by ordering that the sentences be served consecutively to previously imposed sentences. Although he complains about the excessive length of the aggregate sentence, he does not dispute the criteria the trial court found to justify the imposition of consecutive sentencing. We note that the appellant's presentence report reflects that the appellant reported working as a massage clinic instructor at the Georgia Career Institute from September 13, 2007, to March 16, 2009; as an assistant at Yates Nissan from August 2006 to February 2007; and as a stocker at Petsmart from February 2004 to June 13, 2008. The presentence report further reflects that since 2001, when he was eighteen years old, he has amassed a criminal history consisting of one conviction of possession of schedule II drugs; one conviction of aggravated robbery; thirteen convictions of aggravated burglary; six convictions of automobile burglary; three convictions of burglary; three convictions of attempted aggravated burglary; three convictions of the theft of property valued between $10,000 and $60,000; two convictions of the theft of property valued between $1,000 and $10,000; two convictions of driving under the influence; and one conviction for driving on a revoked license. Clearly, the record supports the trial court's finding that the appellant has an extensive criminal history. Tenn. Code Ann. § 40-35-115(b)(2).

Further, at the sentencing hearing, the appellant conceded that he committed the instant offenses while on probation, and the record supports this concession. Tenn. Code Ann. § 40-35-115(b)(6).

Moreover, the trial court noted that the appellant has consistently and repeatedly victimized the public by engaging in dangerous behavior. The court stated, "[W]e're lucky that nobody has been seriously injured or killed along the way over his decade of criminal

past." The court stated that the appellant had been given numerous opportunities to rehabilitate, but he continued to offend. The court observed that the appellant had an "extraordinarily lengthy and serious criminal record" and that many of his offenses were committed while he was on probation or parole. Therefore, the court determined that confinement was necessary to protect the public from being further victimized by the appellant. Given the appellant's multiple commissions of aggravated robbery, aggravated burglary, and theft, coupled with his sparse employment history, the trial court's findings that the appellant was a professional criminal and a dangerous offender were justified. See State v. Allen Prentice Blye, No. E2001-01375-CCA-R3-CD, 2002 WL 31487524, at *11 (Tenn. Crim. App. at Knoxville, Nov. 1, 2002); State v. Jason Brian Hargrove, No. M2001-01579-CCA-R3-CD, 2002 WL 1585638, at *3 (Tenn. Crim. App. at Nashville, July 18, 2002).

The appellant's primary complaint is that his effective sentence of fifty-eight years in Rutherford County was sufficient to serve the interests of justice and protect the public. He states that he is twenty-nine years old and will be eighty-seven years old before completing his Rutherford County sentences and that ordering consecutive sentencing resulting in an effective sentence of eighty-five years is not reasonable in relation to the offenses committed. However, this court has previously stated "that the trial court is not required to give [a defendant] leniency because of his age and the aggregate effect of the sentences." State v. Vincent Hunt, No. W2009-00165-CCA-R3-CD, 2010 WL 1407236, at *9 (Tenn. Crim. App. at Jackson, Apr. 8, 2010). We conclude that the trial court did not err by imposing consecutive sentencing.

### III. Conclusion

In sum, we conclude that the trial court correctly found that factors justify consecutive sentencing. Therefore, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE

-7-